# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KONOIKE CONSTRUCTION CO. LTD., )
)
Plaintiff, )
)
v. ) Civil Case No. 17-1986 (RJL)
)
MINISTRY OF WORKS, TANZANIA, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION
(March 6, 2019) [Dkt. ## 1, 22]



Plaintiff Konoike Construction Co. Limited ("Konoike" or "plaintiff") filed this action to confirm an arbitral award entered in its favor by the International Chamber of Commerce's International Court of Arbitration ("ICC"). The ICC determined that defendants, the Ministry of Works of Tanzania, the Tanzanian National Roads Agency, the Ministry of Transport of Tanzania, and the Attorney General of the United Republic of Tanzania (collectively, "Tanzania" or "defendants"), owed Konoike outstanding payments on a road construction contract. After the deadline to respond to Konoike's petition to confirm its arbitral award passed without response, the Clerk of the Court declared each defendant in default, and Konoike moved for entry of a default judgment.

Konoike's motion prompted Tanzania to begin participating in this case. Tanzania opposed the motion for default judgment and, in its opposition brief, asked that its default

be set aside. I now have before me dueling requests to enter judgment on, and to set aside, the Clerk's default.

While I can set aside a default "for good cause," Fed. R. Civ. P. 55(c), I cannot say that the record before me demonstrates the requisite good cause here. The record does, however, establish that Konoike's ICC award qualifies for judicial confirmation under the applicable statute and convention. Accordingly, I will GRANT Konoike's motion for entry of default judgment and CONFIRM its arbitral award. Konoike also seeks an award of attorneys' fees and costs, but because Tanzania has not unjustifiably refused to abide by the ICC award, that portion of Konoike's request will be DENIED.

## BACKGROUND

Konoike is a Japanese limited liability company that, in 2003, entered into a contract with the Tanzanian Ministry of Works to upgrade a seventy-nine-mile stretch of road between the cities of Dodoma and Manyoni in central Tanzania. *See* Pet. Confirm Arb. Award ("Pet.") ¶¶ 8, 14 [Dkt. # 1]. After a series of delays and disputes, Konoike terminated the contract, in 2008, having completed most, but not all, of the anticipated work. *Id.* ¶¶ 15-18. Konoike then initiated arbitration, seeking payments due under the contract, compensation for delays and disruptions to the project, and costs arising from the contract's termination. *Id.* ¶¶ 19-23. Tanzania participated in the arbitration but ultimately lost. *Id.* ¶¶ 23-30. And in 2016, the ICC awarded Konoike contract damages of TZS 20,714,401,234.00; USD 38,964,296.00; and JPY 324,734,551.00. *Id.* ¶¶ 29-30. The arbitral award also provided that Tanzania must (i) indemnify Konoike for "any final

2

amount of [value-added tax ("VAT")], . . . which the Tanzanian Revenue Authority seeks to recover on sums awarded in the underlying arbitration in excess of any VAT which [Konoike] has so far paid in respect of the Project or the Contract"[1] at issue; (ii) indemnify Konoike for "any interest, fines, penalties and/or other charges that may be imposed on [Konoike] in relation to VAT on the Project or Contract, provided that any such interest, fines, penalties or other charges do not arise in whole or in part from any fault on the part of" Konoike; (iii) pay Konoike's arbitration costs of TZS 677,864.82; USD 141,425.12; JPY 16,446,083.30; and GBP 7,435,908.79; and (iv) pay to Konoike the ICC's arbitration costs of USD 534,220.00. Pet. Ex. 1 at 282-83 [Dkt. # 1-2].

Konoike petitioned this Court to confirm the ICC award on September 26, 2017. *See* Pet. at 9. The petition included a request that Tanzania pay the attorneys' fees and costs associated with this proceeding. *See id.* Three months later, in January 2018, Konoike filed an affidavit in support of default, noting that no response to its petition had been filed. *See* [Dkt. # 17]. The Clerk entered default against Tanzania the next day, *see* [Dkt. ## 18-21], and in March, Konoike moved for entry of default judgment on its petition, *see* Pl.'s Mot. Default J [Dkt. # 22]. Tanzania appeared in the case shortly after the motion for default judgment was served, and it now opposes the motion and asks that the default be set aside. *See* Defs.' Mem. Opp. Mot. Default J. ("Opp.") [Dkt. # 36]. The parties' requests are ripe for resolution.

---

[1] The terms "Project" and "Contract" are defined in the ICC award. *See* Pet. Ex. 1 at 5-6.

## ANALYSIS

**I. Confirmation of the ICC Award**

Konoike seeks confirmation of its ICC award pursuant to the New York Convention, as implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208. Pet. ¶ 1. The New York Convention applies when

> (i) [a foreign arbitral] award arises from a commercial legal relationship between the parties; (ii) there was a written agreement to arbitrate disputes arising from that relationship; (iii) the agreement provided for arbitration proceedings to take place in a signatory country to the New York Convention; and (iv) at least one of the parties is not an American citizen.

*Newco Ltd. v. Gov't of Belize*, 156 F. Supp. 3d 79, 81 (D.D.C. 2015).

Each of the Convention's requirements is satisfied here. Konoike's ICC award arose from a contract dispute between Konoike and Tanzania. *See* Pet. Ex. 1 at 24-25. The contract at issue, including the arbitration clause, was memorialized in writing. *See* Pet. Ex. 3 § 20.6 [Dkt. # 1-4]. The parties agreed that the arbitration would take place in England, *see* Pet. Ex. 1 at 13, a signatory to the New York Convention, *see Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 35 n.11 (D.D.C. 2013). And no party to the arbitration is an American citizen. *See* Pet. ¶¶ 8-13.

When an arbitral award is subject to the New York Convention, Congress has provided that federal district courts have jurisdiction over confirmation proceedings. *See* 9 U.S.C. § 203; *Newco*, 156 F. Supp. 3d at 82. That jurisdiction extends to proceedings against foreign sovereigns, *see* 28 U.S.C. § 1605(a)(6), and courts may assert personal jurisdiction over foreign sovereigns in a New York Convention proceeding "where service

has been made pursuant to the Foreign Sovereign Immunities Act," *Newco*, 156 F. Supp. 3d at 82 (citing 28 U.S.C. §§ 1330(a), 1608). Tanzania concedes that it "was served with the petition, summons, notice of suit and accompanying documents in this case on October 23, 2017," and raises no suggestion that service was improper. Opp. at 3. Indeed, the parties do not appear to dispute, and for the reasons just discussed I conclude, that all jurisdictional requirements are satisfied in this action.

The parties do, however, dispute whether Konoike is entitled to default judgment. Tanzania opposes entry of judgment and asks me to "set aside the [Clerk's] default . . . so that Tanzania may defend [Konoike]'s claim against it on the merits." Opp. at 13. Courts in this Circuit, when tasked with deciding whether to set aside a default, are "supposed to consider 'whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious.'" *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980)). These three factors, referred to as the *Keegel* factors, "are not exclusive . . . as the 'good cause' standard of Rule 55(c) 'is designed to empower courts to consider the equities that specially arise in a given case.'" *Africa Growth Corp. v. Republic of Angola*, No. 17-2469, 2018 WL 6329453, at *3 (D.D.C. Dec. 3, 2018) (quoting *Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958, 966 (D.C. Cir. 2016)). But the *Keegel* factors are a useful "guide . . . in determining whether good cause exists." *Grynberg v. BP P.L.C.*, 596 F. Supp. 2d 74, 77 (D.D.C. 2009). Here, they weigh against finding good cause to set Tanzania's default aside.

5

First, Tanzania's default was willful. Tanzania "acknowledges that it was aware of this action" but explains that it did not immediately respond to Konoike's petition because it "believed in good faith that a prompt settlement would be possible." Opp. at 11. I do not doubt Tanzania's good faith in this regard, but "[a] finding of bad faith is not a necessary predicate to the conclusion that a defendant acted 'willfully.'" *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003) (quoting *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998)). Tanzania's decision here—the choice to forego compliance with a court deadline because of ongoing settlement negotiations—has repeatedly, and with good reason, been deemed "willful" noncompliance. *See id.* at 26-27 (collecting cases). "Parties engaged in litigation frequently discuss the possible settlement of their disputes . . . ." *Simon v. Pay Tel Mgmt., Inc.*, 782 F. Supp. 1219, 1226 (N.D. Ill. 1991). If such an ordinary occurrence allowed litigants to decide, without consequence, to "excuse [themselves] from attending court appearances and otherwise complying with the Court's orders" and deadlines, litigation would not be administrable. *Id.* And in those cases where a delay is necessary, litigants have a mechanism available to seek relief—they may move to stay or extend a deadline. "[S]ettlement negotiations," therefore, are "no basis to ignore [an] obligation[] to file an answer," *Int'l Painters*, 288 F. Supp. 2d at 27, and Tanzania's hope that a prompt settlement would resolve this dispute is not good cause to set its default aside.

The second *Keegel* factor—prejudice to the plaintiff—is neutral in this case. On the one hand, "delay[ing] satisfaction of [a] plaintiff['s] claim . . . is insufficient" prejudice, in

6

and of itself, to deny a request to set aside a default. *Keegel*, 627 F.2d at 374. Konoike's argument that it will be prejudiced if I were to set Tanzania's default aside rests almost entirely on delay. On the other hand, *unnecessarily* drawing out proceedings "unfairly prejudices [a] plaintiff to some degree," *Int'l Painters*, 288 F. Supp. 2d at 31, and that unfairness is particularly strong here. Proceedings to confirm arbitral awards, even outside the context of a default, are "summary . . . in nature" and "not intended to involve complex factual determinations." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). An action under the New York Convention is confined to an analysis of "the limited statutory conditions for confirmation or grounds for refusal to confirm," *id.*, which Tanzania addressed when opposing Konoike's motion for default, *see* Opp. at 7-11. Tanzania thus had, and took, an opportunity to brief the only issues that may be raised in this summary proceeding. Setting aside the default allows little more than the chance to raise the same arguments again. Because the opportunity to reiterate already briefed arguments is no more a reason to extend this case than delaying judgment is a reason to enforce the default, the prejudice factor does not point conclusively in either direction.

The third *Keegel* factor is less ambiguous: Tanzania has not raised a meritorious defense. At this stage, Tanzania need only "proffer[] [a] defense . . . [that] give[s] the factfinder some determination to make." *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 84 (D.D.C. 2011) (quotation marks omitted). But the defense Tanzania has raised— a contention that confirmation of Konoike's arbitral award would be contrary to the public policy of the United States because the award has been satisfied by setting off Konoike's

7

tax liability to Tanzania—does not, as a matter of law, justify denying Konoike's petition for confirmation.

"A district court confirming an arbitration award does little more than give the award the force of a court order." *Zeiler*, 500 F.3d at 169. This "ministerial task," *In re Consolidated Rail Corp.*, 867 F. Supp. 25, 31 (D.D.C. 1994), does "not require[] [courts] to consider the subsequent question of compliance," *Zeiler*, 500 F.3d at 169. So courts "may confirm an arbitration award against a party even when the party has complied with th[e] award.," *Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 239 (S.D.N.Y. 2003), or dismiss a defendant's "argument that it has fully complied with [an arbitral] award" as "irrelevant" to confirmation proceedings, *Am. Home Assur. Co. v. Employers Ins. Co. of Wausau*, No. 13-5169, 2014 WL 9866871, at *1 (S.D.N.Y. Mar. 13, 2014). Tanzania's claim that Konoike's award has been satisfied does not, therefore, supply a reason to deny Konoike's petition. Even if Tanzania is correct, the ICC award is confirmable.

Tanzania's defense fails for a second reason, as well. In proceedings under the New York Convention, "a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)). Tanzania argues that confirming the ICC award after it has been satisfied by a tax set off "would be contrary to the public policy of the United States." Opp. at 7. This public policy exception is one of the grounds for refusing enforcement

8

enumerated in Article V of the Convention, *see* N.Y. Conv. Art. V(2)(b), albeit a "very narrow[]" ground, *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998). But our Circuit Court has already addressed an analogous case and declined to apply the Convention's public policy exception to it. In *Newco Limited v. Government of Belize*, the Circuit Court affirmed confirmation of a foreign arbitral award against the Government of Belize despite a Belize Supreme Court decision permitting the debtor-government to "subtract unpaid taxes" from the award. 650 F. App'x 14, 15-16 (D.C. Cir. 2016). That situation did not, according to the Court, present a "'clear-cut case[]' where 'enforcement would violate the forum state's most basic notions of morality and justice,'" so confirmation was not contrary to public policy. *Id.* at 16 (quoting *Termorio*, 487 F.3d at 938 (alteration added)). This case presents the same situation: A non-sovereign party seeks confirmation of an arbitral award against a foreign government, and the government responds that the award should be reduced to set off a tax debt. If *Newco* did not fit within the New York Convention's narrow public policy exception, this case does not either, and Tanzania's invocation of the exception is not a meritorious defense to confirmation.

The *Keegel* analysis thus reveals no good cause to set aside Tanzania's default. One factor is neutral, and two weigh decidedly against Tanzania's request. No factor suggests that additional proceedings are needed to determine whether Konoike's ICC award should be confirmed under the New York Convention. Accordingly, Konoike's motion to enter

default judgment will be granted to the extent it seeks confirmation of its ICC award.[2]

## II. Attorneys' Fees and Costs

Konoike also requests an order requiring Tanzania to pay the attorneys' fees and costs Konoike incurred during this confirmation proceeding. *See* Pet. at 9. That request will be denied.

"[A] party seeking to confirm a foreign arbitral award under the New York Convention may recover reasonable attorneys' fees and costs, at least where the respondent unjustifiably refused to abide by the arbitral award." *Swiss Inst. of Bioinformatics v. Glob. Initiative on Sharing All Influenza Data*, 49 F. Supp. 3d 92, 98 (D.D.C. 2014) (quoting *Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 2 (D.D.C. 2013) and collecting cases). But Konoike has not shown an unjustified refusal to abide by its ICC award. Konoike concedes that Tanzania has paid over eleven million United States dollars against the award and engaged in settlement discussions intended to resolve the remainder of the parties' dispute. *See* Pl.'s Rep. Mot. Default J. at 4, 10 [Dkt. # 37]. This is not, moreover, a case in which "the respondent state 'obstinately refused to participate' in the litigation, even after the petitioner went 'above

---

[2] "Courts in the United States ordinarily give judgment on causes of action arising in another state, or denominated in a foreign currency, in United States dollars, but they are not precluded from giving judgment in the currency in which the obligation is denominated or the loss was incurred." RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 823(1) (1987). In particular, courts may issue "a judgment in a foreign currency . . . when requested by the judgment creditor." *Id.* § 823 cmt. b. Konoike has requested that here, seeking confirmation of its award in the same combination of Tanzanian shillings, United States dollars, Japanese yen, and British pounds sterling in which the award was issued. *See* Pet. at 8-11. Tanzania does not address the currency in which judgment should be entered in its opposition to Konoike's motion for default judgment, so Konoike's request will be granted.

and beyond its obligations.'" *Miminco, LLC v. Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 219 (D.D.C. 2015) (quoting *Concesionaria Dominicana*, 926 F. Supp. 2d at 3). While Tanzania's default was willful, it has now appeared, expressed its willingness to participate in the litigation, and explained why it contends the ICC award has been satisfied. Under these circumstances, Konoike is not entitled to attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Konoike's motion for entry of default judgment and CONFIRMS its arbitral award, but the Court will not order Tanzania to pay the attorneys' fees and costs Konoike incurred in this proceeding. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge